**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **SAMUEL SAN MIGUEL and** | § | |
| **ALONZO MAY,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| | § | |
| **V.** | § | **A-25-CV-039-RP** |
| | § | |
| **MICHAEL SEARCY, et al.,** | § | |
| **Defendants.** | § | |

## <u>ORDER</u>

Before the Court are Plaintiffs Samuel San Miguel and Alonzo May's Second Amended Complaint,[1] their Motions for Preliminary Injunction (ECF Nos. 25, 34-36, 48), Defendants' Motions to Dismiss (ECF Nos. 37, 40, 45), and Plaintiffs' response thereto (ECF No. 58). Plaintiff San Miguel has also filed a Motion for Temporary Restraining Order (TRO) to which Defendants have responded. (ECF Nos. 50-51, 53-56). Plaintiffs are proceeding pro se and in forma pauperis. Upon review of the parties' pleadings, the Court denies San Miguel's motion for TRO, grants Defendants' motions to dismiss, and dismisses as moot Plaintiffs' motions for preliminary injunction.

## I. FACTUAL BACKGROUND

Both San Miguel and May are civilly committed as Sexually Violent Predators (SVPs); they currently reside at the Texas Civil Commitment Center (TCCC) and their supervision is managed by the Texas Civil Commitment Office (TCCO). Plaintiffs name the following defendants in their official and individual capacities: Michael Searcy, TCCO Contract Compliance Manager; Marsha McLane, TCCO Executive Director; Jessica Marsh, TCCO Deputy Director; Kara Gougler, TCCO Civil Commitment Manager; Chris Greenwalt, TCCO Unit Supervisor; the

---

[1] Plaintiffs incorporate their Original Complaint, First Amended Complaint, and all attachments thereto to their Second Amended Complaint.

1

Management and Training Corporation (MTC); Tanya Hainey, TCCC Clinical Therapist; Adam Pierce, TCCC Administrative Captain of Security; and Travis A. Pittock, TCCC Lead Clinical Therapist. Plaintiffs name the following defendants in their individual capacities only: John Clum and Michael Anderson, TCCO Case Managers.

Plaintiffs' complaint focuses on Texas Health and Safety Code § 841.082(a)(4)(A)(ii)-(iii) (Commitment Requirements) (hereinafter "the Statute"). The Statute states as follows:

(a) Before entering an order directing a person's civil commitment, the judge shall impose on the person requirements necessary to ensure the person's compliance with treatment and supervision and to protect the community. The requirements shall include: ….
(4) requiring the person to submit to appropriate supervision and:
    (A) submit to tracking under a particular type of tracking service, if the person:
        (i) while residing at a civil commitment center, leaves the center for any reason;
        (ii) is in one of the two most restrictive tiers of treatment, as determined by the office;
        (iii) is on disciplinary status, as determined by the office; or
        (iv) resides in the community; ….

TEX. HEALTH & SAFETY CODE ANN. § 841.082(a)(4)(A) (West 2025).

Plaintiffs allege that, in accordance with amendments made to the Statute in 2017, all TCCC clients in Tiers 1 and 2, along with Tier 5 clients living in the community, are required to wear a GPS tracking device 24 hours a day. Plaintiffs allege TCCC clients in Tier 3 and 4 are not required to wear GPS trackers, unless TCCO decides to put GPS trackers on them, usually with no due process. Plaintiffs further allege TCCO Policy 3.36, Determination of Clients Required to Submit to Global Positional Satellite (GPS) (hereinafter "the Policy"), is arbitrary and conflicts with the Statute.

Plaintiffs allege that, in accordance with the Statute and the Policy, they are required to charge their GPS tracking devices for two hours every morning and evening, resulting in four hours of charging in a 24-hour period. To do so, Plaintiffs allege they must plug the GPS tracking

2

devices into an electrical outlet and wait, attached to the outlet, while the device charges. San Miguel alleges he charges his device when he goes to sleep at night.

Plaintiffs state TCCC clients are required to wear their GPS tracking devices at all times, during showering and exercise, which causes blistering. Plaintiffs further allege TCCC staff routinely enter into Plaintiffs' rooms, even in the middle of the night, and ordered them to walk the "breezeway" to clear their GPS tracking devices if the GPS signals are not picking up. Plaintiff May alleges MTC is aware he has arthritis in his knee and that walking to clear his GPS tracking device worsens it. He alleges that, on April 20, 2025, TCCC staff ordered him to walk outside to clear his GPS tracking device and told him that, if he refused, he would be punished. May alleges he complied with the order.

Plaintiffs describe TCCC as a maximum-security prison, surrounded by two motion-sensing razor wire fences that are topped with concertina wire. Plaintiffs allege that, out of the 4,500 sex offenders serving sentences in the Texas Department of Criminal Justice (TDCJ), none are required to wear GPS tracking devices. Plaintiffs state that when San Miguel was in Lamb County Jail between October 12, 2022, and April 24, 2023, he was not required to wear a GPS tracking device. Plaintiffs further allege that thousands of Texas citizens who are civilly committed in Texas mental health hospitals are not required to wear GPS tracking devices.

Plaintiff San Miguel states he has been diagnosed with multiple mental illnesses, including Bi-Polar Disorder, Adult ADD/ADHD Combined-Type, Insomnia, and Anti-Social Personality Disorder. He states he takes 400mg of Seroquel and 100mg of Benadryl nightly to treat his mental illnesses. Plaintiffs allege that, on September 9, 2024, TCCC staff woke up San Miguel at 3 a.m. to clear his GPS tracking device but San Miguel refused. San Miguel alleges he does not remember this due to his nightly medication; nonetheless, he was charged with refusing to obey a direct order. On October 16, 2024, a Behavior Management Review (BMR) committee convened

3

consisting of Defendants Hainey, Clum, and non-defendant James Winkler. San Miguel alleges he told the committee about his nighttime medication and that these medications caused extreme drowsiness and disorientation. He states he asked to call his roommate to testify on his behalf, but the BMR committee refused his request. The committee found him guilty and punished him with phone restriction and a 90-day package restriction. San Miguel alleges the committee laughed at him and told him to follow the rules.

On November 8, 2024, San Miguel alleges he sent a mental health request to the Psychiatry Department because the constant harassment from TCCC staff regarding his GPS tracking device was causing him stress and emotional disturbances. San Miguel states that, at approximately 10 p.m. on January 9, 2025, a TCCC staff member ordered him to walk the breezeway to clear his GPS tracking device. San Miguel alleges he refused because it had snowed that evening, the ground was icy, and he was very drowsy after taking 400mg of Seroquel. He states Defendant Anderson wrote him a disciplinary for the incident. San Miguel alleges that, on March 19, 2025, a BMR hearing was held regarding his refusal to walk the breezeway to clear his GPS tracking device.[2] The BMR committee consisted of Defendants Pittock, Greenwalt, and Pierce. San Miguel alleges he refused to attend the hearing because his pre-hearing request to call witnesses was denied. He states he was found guilty and punished with 30 days in the Secure Management Unit (SMU).

Plaintiffs raise the following seven claims:

1. The Statute violates Plaintiffs' procedural and substantive due process rights under the Fourteenth Amendment because it is an arbitrary, unlawful restraint that amounts to punishment. It also violates Plaintiffs' Eighth Amendment right to be free from punishment.

2. By creating and enforcing the Policy, Defendants Searcy, McLane, Marsh, Gougler, Greenwalt, and MTC have subjected Plaintiffs to unlawful punishment and arbitrary government action, in violation of their procedural and substantive due process rights

---

[2] It is unclear whether this BMR is regarding the January 9, 2025, incident or some other event.

under the Fourteenth Amendment. Further, Searcy and MTC have violated Texas state law subjecting Plaintiffs to negligence and the intentional infliction of emotional distress.

3. Defendants Searcy, McLane, Gougler, Greenwalt, and MTC violated Plaintiff San Miguel's right to procedural due process by creating and enforcing a disciplinary policy where San Miguel was denied his right to call witnesses and have his medical condition considered during a BMR hearing. This also violates San Miguel's substantive due process rights as well as his rights under the Eighth Amendment.

4. Defendants Hainey and Clum violated San Miguel's right to procedural and substantive due process and his Eighth Amendment rights when they denied his request to call witnesses, confront his accuser, or have his mental health condition considered during the BMR hearing related to the September 9, 2024, disciplinary he received for refusing to clear his GPS tracking device at 3 a.m. Defendant Hainey also violated Texas state law subjecting San Miguel to negligence and the intentional infliction of emotional distress.

5. Defendants Searcy, McLane, Marsh, Gougler, Greenwalt, and MTC violated San Miguel's procedural and substantive due process rights by creating and enforcing the Policy that resulted in San Miguel being punished for refusing to clear his GPS tracking device on January 9, 2025.

6. Defendants Pittock, Pierce, and Clum violated San Miguel's procedural and substantive due process rights when they conducted a BMR hearing and punished him with thirty days in the SMU after denying his request to call witnesses, confront his accuser, or have his mental health conditions considered. Defendants Pittock, Pierce, and Clum also violated Texas state law by subjecting San Miguel to negligence and the intentional infliction of emotional distress.

7. Defendants Searcy, McLane, Gougler, Greenwalt, and MTC violated Plaintiff May's right to substantive due process and his Eighth Amendment rights by creating the Policy that requires him to walk outside to clear his GPS tracking device without consideration of his knee arthritis.

Plaintiffs seek a declaratory judgment that the Statute is unconstitutional and amounts to cruel and unusual punishment under the Eighth Amendment, and that Defendants' actions and omissions violated Plaintiffs' rights. Plaintiffs also seek a permanent injunction ordering Defendants to remove their GPS tracking devices while they are inside the TCCC. Finally, Plaintiffs seek compensatory and punitive damages. (ECF Nos. 1, 20, 25.)

Defendants move to dismiss Plaintiffs' complaint, arguing, among other things, that (1) their Eighth Amendment claims should be dismissed because, due to their status as civil committees, all their claims arise under the Fourteenth Amendment; (2) Plaintiffs'

official-capacity claims should be dismissed for lack of subject-matter jurisdiction and for failure to state a claim; (3) Plaintiffs' GPS-tracking-device claims are barred by the statute of limitations; (4) Plaintiff's as-applied and facial challenges to the Statute fail as a matter of law; (5) the GPS-tracking-device and disciplinary claims fail to state a claim for a violation of Plaintiffs' procedural or substantive due process rights; and (6) Plaintiffs' state-law claims should be dismissed for lack of jurisdiction, and alternatively, for failure to state a claim. (ECF Nos. 37, 40, 45.) On December 15, 2025, Plaintiffs filed a response in opposition to the motions to dismiss. (ECF No. 58).

On November 10, 2025, Plaintiff San Miguel filed a motion for TRO, arguing Defendants were denying him his legal materials, including the record of documents filed in this lawsuit, and requested the Court order Defendants not to obstruct his access to the courts. (ECF Nos. 50-51, 56.) Defendants oppose the motion. (ECF Nos. 53-55.) Plaintiffs also have three pending motions for preliminary injunctions, where they restate their arguments that Statute is unconstitutional and request the GPS tracking devices be removed from their bodies. (ECF Nos. 34-35, 49.)

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. FED. R. CIV. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that

jurisdiction does in fact exist." *Id*. In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678.

In deciding a motion to dismiss under Rule 12(b)(6), a court will accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *See Raj v. La. State Univ.*, 714 F.3d 322, 329-30 (5th Cir. 2013). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 679. Further, a plaintiff's factual allegations must establish more than just the "sheer possibility" a defendant has acted unlawfully. *Id*. Determining a complaint's plausibility is a "context-specific task," but if the factual allegations "do not permit the court to infer more than the mere possibility of misconduct" the complaint fails to show "'that the pleader is entitled to relief.'" *Id*. (citing Fed. R. Civ. P. 8(a)(2).)

### III. DISCUSSION

1. Motion for Temporary Restraining Order

The Court first addresses Plaintiff San Miguel's motion for TRO. San Miguel has filed a motion, a supporting brief, and additional supporting documents, but there are factual

inconsistencies among the supporting brief and the supporting documents. The Court will state what each pleading alleges. In San Miguel's Brief in Support (ECF No. 51), he alleges that, on August 12, 2025, he was placed in SMU and was not given any of his legal work. On October 10, 2025, he spoke with Defendant Pierce and explained he needed copies of the filings in this case. He states he was given some of his legal work, but that Defendants believe they have a right to decide what legal work to give him. He states that, as of November 5, 2025, he has not been given his legal work and does not have the documents filed in this case. He requests the Court order Defendants not to deny him any of his legal materials, court papers, and pleadings. Plaintiff attaches three client communication forms he filed in February 2025 complaining about not having access to his legal work. In one response, Defendant Pierce states, "Per procedure you are allowed one tote of legal work. If you currently have legal work you are not using then you can exchange it per policy." When San Miguel again complains that Pierce is denying him his legal materials, Pierce responds on March 5, 2025, "I have not denied any legal work I have explained the process to you and you still refuse to follow it." Plaintiff also attaches a document he filed in a separate case in November 2024, wherein he complains about being denied access to the law library. (ECF Nos. 50-51.)

Defendants oppose Plaintiff's motion, arguing his motion for TRO cannot be decided until the Court decides Defendants' jurisdictional challenges to Plaintiffs' complaint. Alternatively, Defendants argue Plaintiff's motion fails as a matter of law. In support, they submit two affidavits, one from Adam Pierce and one from Calvin Brannon, each dated December 3, 2025. Defendant Pierce attests that San Miguel is currently in the SMU where residents are only allowed to have one legal tote of work at a time. Pierce states that residents who want access to legal work that is not in their tote have to make a request to exchange their current tote for another one. Pierce attests that he explained this to Plaintiff San Miguel in February 2025, but that San Miguel did not make a

8

request for an exchange. Pierce further states he is not aware of any request by San Miguel to either him or the Property Manager to exchange his current tote for another one. (ECF No. 55 at 3.)

Mr. Brannon attests that he is Chief of Security at TCCC and that his understanding is that Plaintiff San Miguel was provided legal work that would fit into his allowed legal tote. He further attests that he was not aware of San Miguel submitting a request to either him or the Property Manager since August 2025 to exchange his legal work. (*Id.* at 5.)

On December 5, 2025, San Miguel filed additional documentation in support of his TRO motion, in which he alleges he was placed in the SMU on October 12, 2025, and was denied access to the law library for two days and all of his legal materials for one-and-a-half weeks. He states that, as of October 28, 2025, he had access to the law library for one hour a day, Monday through Thursday. He further alleges he still does not have all of his legal work, but that he has been granted a legal visit with Plaintiff May. Finally, he states he hopes to file a response to Defendants' motions to dismiss before the Court has to consider these supplemental documents. He attaches several grievances and client communication forms, all dated from late October to mid November, wherein he complains about this issue to Pierce, Brannon, and another TCCC staff member. San Miguel is told to follow the proper procedures for exchanging legal work and that the law library is available. He also submits some of Plaintiff May's medical records, two pages from Defendants Hainey, Pierce, and MTC's motion to dismiss, and client communication forms May submitted seeking to speak with San Miguel. (ECF No. 56.) On December 15, 2025, Plaintiffs filed a response in opposition to Defendants' motion to dismiss. (ECF No. 58.)

The purpose of a TRO is to preserve the status quo and prevent irreparable harm until the court makes a final decision on injunctive relief. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). To obtain a TRO, an applicant must satisfy the following four elements: (1) substantial likelihood of success on the

merits; (2) substantial threat of irreparable injury; (3) the threatened injury outweighs any harm the order might cause to the defendant; and (4) the injunction will not disserve the public interest. *Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 442 (5th Cir. 2000). Whether to grant or deny a TRO is within the district court's discretion. *Moore v. Brown*, 868 F.3d 398, 402 (5th Cir. 2017).

The record in this case shows the following. Defendants filed their motions to dismiss on June 18, June 24, and July 8, 2025. The Court's Local Rules state that "[a] response to a dispositive motion shall be filed not later than 14 days after the filing of the motion." W.D. TEX. RULE CV-7-1(e). Accordingly, Plaintiffs had until July 2, July 8, and July 22, 2025, respectively, to timely file their responses to the motions to dismiss. The latter date was two weeks before Plaintiff alleges he was placed into the SMU and his legal materials taken away.

Because Plaintiffs are proceeding pro se, the Court generally affords them additional time to file their responsive pleadings. On October 2, 2025, Plaintiff San Miguel signed a motion "re-urging" a pending motion for preliminary injunction and stating, "Plaintiffs' notify the court that a response to Defendants' Second Motion to Dismiss will be received by the Court within 10-days-and also-request an extension of time to do the same (*if necessary*)." (ECF No. 48 at 2) (errors in original). The Court received San Miguel's motion on October 14, 2025, 12 days after it was signed. Allegedly, during this time San Miguel was again confined to the SMU. After waiting 23 days for Plaintiffs' response, the Court dismissed the "re-urging" motion and gave Plaintiffs until November 21, 2025, to file their response to Defendants' motions to dismiss. The Court received no response; instead San Miguel filed his motion for TRO, which was received by the Court on November 10, 2025.

The Court denies Plaintiff San Miguel's motion for TRO. First, San Miguel has not shown he is being denied his legal work while in the SMU. San Miguel claims he has not received all of

his legal work since being placed in the SMU but does not detail what legal work he needs and why he needs it. Further, Defendant Pierce and Mr. Brannon attest that clients in the SMU have access to one tote of legal work and that, to their knowledge, San Miguel has not requested to exchange his tote with a new one. Further, San Miguel attaches client communications showing that Pierce alerted him on how to exchange his legal property as early as February 2025, and San Miguel's October and November communications show he is not availing himself of this process. San Miguel also admits he has access to the law library for an hour Monday through Thursday, and that he was able to meet with May. At no point does San Miguel allege May has been denied access to any legal work. And, perhaps most importantly, Plaintiffs have filed a response to Defendants' motions to dismiss. For these reasons, the Court concludes San Miguel has not shown a substantial likelihood of success on the merits or a substantial threat of irreparable injury and denies his motion for TRO.

2. Improper Joinder

Defendants argue Plaintiff May's allegations and claims should be severed from this complaint and dismissed without prejudice to refiling in a separate complaint. They argue the majority of the allegations in Plaintiffs' complaint relate solely to Plaintiff San Miguel and that San Miguel's claims are barred by collateral estoppel and res judicata.

Federal Rule of Civil Procedure 20 states that persons may be joined as plaintiffs if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." FED. R. CIV. P. 20(a)(1). The Court concludes Plaintiff May is not improperly joined and denies Defendants' request to dismiss his claims and allegations from this complaint.

11

3. Eleventh Amendment Immunity

Defendants argue Plaintiffs' claims against them in their official capacities should be dismissed for lack of subject-matter jurisdiction because Plaintiffs cannot seek retrospective declaratory relief and, regarding their request for prospective injunctive relief, Plaintiffs fail to allege an ongoing constitutional violation.

Regarding Plaintiffs claim for declaratory relief, the Court concludes it is not retrospective in nature. Plaintiffs demand, among other things, a declaration that the Statute is unconstitutional, which is not a demand for retrospective declaratory relief.

Regarding Plaintiffs' claims for prospective injunctive relief, the Eleventh Amendment generally precludes suits by private citizens against states in federal court. *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). Sovereign immunity applies not only to actions in which a state is the named defendant, but also to actions against state agencies and instrumentalities. *Regents of the Univ. of Cal. v. Doe*, 519 U.PS. 425, 429 (1997). Lawsuits brought against employees in their official capacity "represent only another way of pleading an action against an entity of which an officer is an agent," and may also be barred by sovereign immunity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). The only exception to this bar is if a plaintiff seeks prospective injunctive relief against a State and the plaintiff alleges the state or its agent is engaged in an ongoing violation of the federal constitution. *Ex parte Young*, 209 U.S. 123 (1908). This exception, however, does not apply to monetary damages. Accordingly, to the extent Plaintiffs seek monetary damages against Defendants in their official capacities, these claims are barred by the Eleventh Amendment.

The *Ex parte Young* exception to sovereign immunity "is based on the legal fiction that a sovereign state cannot authorize an agent to act unconstitutionally." *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013) (cleaned up). In determining whether a complaint falls within this exception, a

12

court conducts a "straightforward inquiry" into whether the complaint alleges an ongoing violation of federal law and seeks prospective relief. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Defendants argue that Plaintiffs' GPS-tracking-device claims fail to state a claim for relief and therefore also fail to allege an ongoing violation of federal law. The Court disagrees. The Plaintiffs' allegations that the GPS tracking devices violate their constitutional rights are sufficient for purposes of the *Ex parte Young* exception to sovereign immunity and their requested injunctive relief—removal of the GPS trackers while they remain confined to TCCC—is prospective in nature. As such, the Court concludes it has jurisdiction over Plaintiffs' claims seeking prospective injunctive relief against Defendants in their official capacities.

4. Statute of Limitations (Claims 4-5)

Defendants argue that Plaintiffs' claims regarding the Statute and the Policy are barred by the statute of limitations because Plaintiffs admit they were aware of the Statute and the Policy in 2017. The statute of limitations for a § 1983 claim is determined by the forum state's limitations period for personal injury torts. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Texas, that is two years from the date the cause of action accrues. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); *Schaefer v. Gulf Coast Reg'l Blood Ctr.*, 10 F.3d 327, 331 (5th Cir. 1994). Federal law, however, determines when a § 1983 cause of action accrues. *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993). Under federal law, a § 1983 cause of action accrues when the aggrieved party knows, or has reason to know, of the injury or damages which form the basis of the action. *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995).

Defendants argue Plaintiffs' cause of action accrued sometime in 2017, when the Statute was amended. However, Defendants do not argue that Plaintiffs were aware of or had reason to know of any injury or damages stemming from the Statute in 2017. As Defendants note, the statute of limitations is an affirmative defense, and therefore Defendants' burden to establish. The Court

13

concludes that, with the exception of Claims 4 and 5, Defendants have failed to carry their burden to show that Plaintiffs' claims are barred by the statute of limitations.

Regarding Claims 4 and 5, Plaintiffs attached to their original complaint a grievance San Miguel filed on January 6, 2022, wherein he states

> Mam, I have 6 Disciplinary Hearing Scripts "BMR" which you were personally involved in subjecting me to punitive sanctions for not getting up in the middle of the night to go walk outside on the sidewalk and walk my leg monitor (GPS) inside of this max. sec. prison compound. On 10-20-21 you even sanctioned me to 180 days package restriction wow 6 months? You being an attorney and the Dept. Dir. of TCCO surely had a rational bases for enforcing your power this way. Especially since I made you well aware and you know I take high doses of psych. Medications to put me to sleep and to treat my Bipolar dis. Thanks for caring so much about what A. my clinical treatment or B. punitive conditions of confinement. Thank you I'd like to know for my mental wellbeing.

(ECF No. 1-3) (errors in original). The grievance was received and signed by Defendant Greenwalt on January 24, 2022. Based on this document, Plaintiff San Miguel's claims regarding the GPS tracking device accrued, at the latest, on January 6, 2022, when he filed the above grievance, which is essentially identical to the scenarios he complains about in Claims 4 and 5. He therefore had until January 8, 2024, to file a complaint regarding this issue. However, San Miguel waited until January 6, 2025, to file this complaint, almost one year after the limitations period expired.

In his response to the motion to dismiss, San Miguel argues his claim is not barred based on the "continuing violation" doctrine. (ECF No. 58 at 14.) However, "[t]he continuing violation doctrine does not apply to claims based on discrete actions … even if those actions are 'serial.'" *Rushing v. Yazoo Cnty.*, 861 F. App'x 544, 553 (5th Cir. 2021) (quotations and citations omitted). In any event, even if these claims 4 and 5 are not barred by the statute of limitations, as the Court explains below, they nonetheless fail as a matter of law.

14

4. Constitutionality of the Statute (Claim 1)

Plaintiffs claim that the Statute violates their procedural and substantive due process rights under the Fourteenth Amendment and amounts to cruel and unusual punishment under the Eighth Amendment. In their motions to dismiss, Defendants argue Plaintiffs have failed to show the Statute is either facially unconstitutional or unconstitutional as-applied to Plaintiffs.

The Court understands Plaintiffs argument to be as follows: by requiring certain individuals to wear GPS tracking devices (a) without any hearing, and (b) in a maximum security prison when others in similar settings—like other civil committees or TDCJ inmates—are not required to wear GPS tracking devices, the Statute violates Plaintiffs' rights to procedural and substantive due process under the Fourteenth Amendment and constitutes cruel and unusual punishment under the Eighth Amendment. The Court analyzes these claims in turn.

a. *Procedural Due Process*

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must first establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). To state a claim for a violation of their procedural due process rights, Plaintiffs must first identify a liberty or property interest that triggers the protections of the Due Process Clause. A liberty interest can arise from either the Constitution itself or from an "expectation or interest created by state laws or policies." *Id*. Plaintiffs appear to argue that they have a liberty interest in not being required to wear a GPS tracking device based on their treatment Tier or disciplinary status. This is not an interest created by state laws and policies—in fact, it is these statutes and policies that Plaintiffs challenge. As such, it must be an interest that arises from the Constitutional itself.

"Examples of constitutional liberty interests include freedom from bodily restraint, the right to contract, and the right to marry …." *Dunsmore v. Muth*, 154 F.4th 360, 366 (5th Cir. 2025)

15

(citing *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 230 (5th Cir. 2020)). Freedom from bodily restraint has generally been recognized as a liberty interest in cases involving incarceration, civil commitment, and the use of shackles and similar physical restraints. *See Turner v. Rogers*, 564 U.S. 431, 445 (2011) (explaining that "loss of personal liberty through imprisonment" is sufficient to trigger due process protections); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (concluding that "commitment for any purpose constitutes a significant deprivation of liberty that requires due process protections."); *Youngberg v. Romeo*, 457 U.S. 307, 314-16 & n.4 (1982) (concluding that shackling an involuntarily committed individual implicated the liberty interest in "freedom of movement" or "freedom from bodily restraint").

Neither the Fifth Circuit nor other federal courts have found that freedom from bodily restraint includes freedom from GPS tracking devices or other forms of electronic monitoring. *See, e.g., Belleau v. Wall*, 811 F.3d 929, 932 (7th Cir. 2016) (observing that "[h]aving to wear a GPS ankle monitor is less restrictive, and less invasive of privacy, than being in jail or prison, or for that matter civilly committed, which realistically is a form of imprisonment."); *Smith v. Kimbal*, 421 F. App'x 377, 380 (5th Cir. 2011) (noting that "[n]either the Fifth Circuit nor the Supreme Court has afforded inmates a protected liberty interest in not having … electronic monitoring conditions imposed as a condition of mandatory supervised release"); *Chandler v. U.S. Parole Comm'n*, 60 F. Supp. 3d 205, 222 (D.D.C. 2014) (concluding that "GPS monitoring and curfew requirements" imposed by the United States Parole Commission did not implicate a protected liberty interest). Plaintiffs do not cite any legal authority showing they have a liberty interest in not being required to wear a GPS tracking device while at TCCC. Because Plaintiffs fail to show they have a liberty interest in avoiding their GPS tracking devices, they are not entitled to any procedural due process protections under the Fourteenth Amendment.

16

b. *Substantive Due Process*

Plaintiffs next argue that the Statute violates their rights to substantive due process under the Fourteenth Amendment. As civil committees, Plaintiffs are "'entitled to more considerate treatment and conditions of confinement'" than prisoners; however, "the Constitution nevertheless affords a state wide latitude in crafting a civil commitment scheme." *Brown v. Taylor*, 911 F.3d 235, 243 (5th Cir. 2018) (quoting *Youngberg*, 457 U.S. 307, 321-22 (1982)). Civil committees have substantive due process rights independent of their procedural due process rights. *Hitt v. McLane*, 854 F. App'x 591, 596 (5th Cir. 2021). In the context of civil commitment, substantive due process requires "only that 'the conditions and duration of confinement … bear some reasonable relation to the purpose for which persons are committed.'" *Brown*, 911 F.3d at 243 (quoting *Seling v. Young*, 531 U.S. 250, 265 (2001)). In Texas, the purposes of civil commitment are the "twin goals of 'long-term supervision and treatment of sexually violent predators.'" *Id*. (citation omitted).

To state a claim, Plaintiffs must show the Statute bears no reasonable relationship to the twin goals of long-term supervision and treatment of sexually violent predators. Plaintiffs argue that because TDCJ prisoners and non-SVP civil committees are not required to wear GPS tracking devices, Plaintiffs also should not be required to do wear them. However, Plaintiffs do not provide the Court with any evidence supporting their allegations regarding the electronic monitoring of prisoners or non-SVP civil committees, and thus these allegations are conclusory and insufficient to support Plaintiffs' claim. *Iqbal*, 556 U.S. at 679. Further, as the Fifth Circuit held in *Brown*, states have "wide latitude" in crafting a civil commitment scheme, so long as that scheme supports the state's underlying goals. The Statute appears to support both these goals: first, as an incentive both to progress in treatment (as clients in Tiers 3 and 4 are not required to wear GPS tracking devices) as well as an incentive to avoid being put on disciplinary status. Even if Plaintiffs are

17

correct and it is redundant to have Tier 1 and 2 clients wearing GPS tracking devices inside what Plaintiffs describe as a maximum-security prison, this does not, in itself, violate substantive due process. Accordingly, Plaintiffs' substantive due process claim also fails as a matter of law.

  *c. Cruel and Unusual Punishment*

  Plaintiffs next argue the Statute constitutes cruel and unusual punishment under the Eighth Amendment. Defendants claim this argument fails because, as civil committees, Plaintiffs' challenges to their conditions of confinement fall under the Fourteenth Amendment. To the extent this challenge implicates Plaintiffs' conditions of confinement, Defendants are correct. "The conditions of confinement for civilly committed individuals are governed by the Due Process Clause of the Fourteenth Amendment." *Miguel v. McLane*, No. 22-10517, 2024 WL 747232, at *9 (5th Cir. 2024) (citing *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982)). The Court has already found this claim to fail under the Fourteenth Amendment's Due Process Clause.

  However, the Fifth Circuit has recognized Eighth Amendment claims brought by civil committees alleging inadequate medical care. *See, e.g., id.* at *5 (concluding district court did not err in applying Eighth Amendment standard to civil committee's inadequate medical care claim because the Fifth Circuit had not decided whether deliberate indifference or professional judgment (pursuant to *Youngberg*) applies to these types of claims); *Bohannon v. Doe*, 527 F. App'x 283, 292 (5th Cir. 2013). Under the Eighth Amendment, "[p]unishment rises to the level of cruel and unusual only if it involves an unnecessary and wanton infliction of pain." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (internal quotation marks omitted). To succeed on their Eighth Amendment claim, Plaintiffs must show "an objective component of conditions so serious as to deprive him of the minimal measure of life's necessities, as when denied some basic human need." *Id*. Plaintiffs' allegations of ankle blisters and abrasions and knee pain do not meet this standard. As a result, Plaintiffs' Eighth Amendment challenge to the statute also fails as a matter of law.

18

*d. Facial & As-Applied Challenge to the SVPA*

Finally, to the extent Plaintiffs are advancing either a facial or as-applied challenge to the entirety of the Sexually Violent Predators Act (SVPA)—of which the Statute is a subsection—this claim is barred by collateral estoppel. Collateral estoppel, or issue preclusion, bars the relitigation of an issue previously litigated and lost in a prior action. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 (1979). The elements of issue preclusion are: "(1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir. 1995). Plaintiff San Miguel brought and lost a facial and as-applied challenge to the SVPA in 2022. *See San Miguel v. Abbott*, No. 1:21-cv-566-RP (W.D. Tex. Jan. 20, 2022). On appeal, the Fifth Circuit affirmed the Court's decision. *See San Miguel v. Abbott*, No. 22-50413, 2023 WL 5032480 (5th Cir. 2023). As a result, to the extent Plaintiffs bring a facial or as-applied challenge to the SVPA, this claim is barred by collateral estoppel.

5. TCCO Policy 3.36 (Claim 2, 7)

In their second and seventh claim, Plaintiffs argue Defendants Searcy, McLane, Marsh, Gougler, Greenwalt, and MTC violated their Fourteenth Amendment rights to procedural and substantive due process by "creating, promulgating, implementing, and enforcing" the Policy. (ECF No. 25 at 8.) They further argue that, regarding Plaintiff May, the enforcement of the Policy violates his Eighth Amendment right to be free of cruel and unusual punishment, because requiring him to clear his GPS tracking device causes him excessive pain.

Plaintiffs attached a copy of the Policy, effective November 4, 2019, to their original complaint. The policy states the following:

> II. Clients Required to Submit to GPS Tracking
>     Clients shall submit to GPS tracking when they:

19

    A. Leave the TCCC;

    B. Are assigned to Tier One or Tier Two or have not yet been assigned to a tier;

    C. Are program non-compliant as determined by the Texas Civil Commitment Office (TCCO) staff which may include, but is not limited, to the following:

        1. Receipt of an incident report that was sustained at a behavior management hearing, within the last 6 months;

        2. Delinquent in cost recovery and does not have an established, approved payment plan;

        3. A client who has been reduced from Tier Five within the previous twelve (12) months;

        4. A client on package restriction;

        5. A client who has privileges suspended or revoked;

        6. A client with pending criminal charges or currently under investigation for a criminal offense;

        7. Program noncompliance, to include refusing to participate in treatment or additional required programming; or

        8. Is considered a flight risk.

    D. Having a special condition of parole/probation supervision requiring them to submit to GPS monitoring…; or

    E. Reside in the community.

(ECF No. 1-3 at 2-3.) The Policy essentially restates the requirements set forth in the Statute. The Policy is more detailed regarding what constitutes being on "disciplinary status," but the Statute explicitly states this is to be determined by TCCO. In all, the Policy does not meaningfully stray from the text of the Statute. Plaintiffs' arguments against the Policy mirror their arguments challenging the Statute, which the Court already concluded does not violate the Fourteenth Amendment's procedural or substantive due process clauses, nor does it violate the Eighth Amendment. Accordingly, claims 2 and 7 fail as a matter of law.

6. Unconstitutional Hearings (Claims 3, 6)

Plaintiff San Miguel argues two of his BMR hearings were constitutionally deficient because he was not allowed to call witnesses, confront his accuser, or have his mental conditions and medications considered during the hearing. However, as the Court noted in its analysis of the Statute, Plaintiffs do not have a liberty interest in avoiding wearing a GPS tracking device. Accordingly, because San Miguel does not have a liberty interest in not wearing his GPS tracking device, he is not entitled to procedural due process protections.

7. State Law Claims

Plaintiffs also raise a variety of state law claims, including negligence and the intentional infliction of emotional distress. In general, a federal court that has original jurisdiction over some claims has the discretion to exercise supplemental jurisdiction over state-law claims. 28 U.S.C. § 1367(a). However, federal district courts also enjoy "broad discretion in deciding whether to retain supplemental jurisdiction over a state law claim once all federal claims are dismissed." *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993).

Here, the Court has dismissed the claims over which it had original jurisdiction as either failing to state a claim or barred by the statute of limitations. The Court therefore declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims. See *Heggemeier v. Caldwell Cnty., Tex.*, 826 F.3d 861, 872 (5th Cir. 2016) ("[A] court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial.") (quoting *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 599 (5th Cir. 2009)).

It is therefore **ORDERED** that Plaintiff San Miguel's Motion for Temporary Restraining Order (ECF No. 50) is **DENIED**.

It is further **ORDERED** that Defendants' Motions to Dismiss (ECF Nos. 37, 40, 45) are **GRANTED**. Plaintiffs' claims seeking monetary damages against Defendants in their official capacities are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs' remaining claims are **DISMISSED WITH PREJUDICE** for failure to state a claim or as barred by the statute of limitations.

It is finally **ORDERED** that Plaintiffs' Motions for Preliminary Injunction and Motion Presenting Further Evidence in Support of the Motion for Preliminary Injunction (ECF Nos. 34-35, 49) are **DISMISSED WITHOUT PREJUDICE** as moot.

SIGNED this 12th day of January, 2026.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE